Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| CECILIA JAMES SOTO<br><br>Demandante<br><br>v.<br><br>MIGUEL A. MONTES DÍAZ<br><br>Apelado<br><br>CECILLE M. MONTES JAMES<br><br>Parte Interventora-Apelante | TA2025CE00213 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Familia y Asuntos de Menores de Bayamón<br><br>Caso núm.:<br>D AL1999-1703<br><br>Sobre: Alimentos |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Salgado Schwarz y el Juez Monge Gómez.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de septiembre de 2025.

El Tribunal de Primera Instancia ("TPI") determinó que ciertos beneficios recibidos por una hija, de parte del gobierno federal, podían acreditarse contra la deuda del padre por concepto de una pensión alimentaria. Según se explica en detalle a continuación, concluimos que, en este caso, los mismos podrían acreditarse únicamente contra el período posterior al inicio del recibo de dichos beneficios.

I.

En junio de 2021, el TPI le impuso al Sr. Miguel A. Montes Díaz (el "Recurrido" o el "Padre") el pago de una pensión alimentaria ascendente a $1,039.84 en favor de su hija, la Sa. Cecille M. Montes

---

[1] El recurso fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones. Como consecuencia de la referida orden, este recurso, así como todo recurso futuro que surja del caso de referencia, pendiente ante el Tribunal de Primera Instancia, será atendido por los integrantes de este panel, quienes adjudicaron los correspondientes recursos anteriores (KLAN202201011).

James (la "Peticionaria" o la "Hija"), quien cumpliría la mayoría de edad a finales de ese mismo año. Por considerar que el Padre no estaba cumpliendo con la referida obligación, la madre de la Peticionaria recurrió al TPI en varias ocasiones y solicitó que se le impusiera desacato al Padre.

Mientras tanto, el 14 de noviembre de 2021, la Hija advino a la mayoría de edad. Al día siguiente, el Padre presentó una moción de relevo de pensión alimentaria (la "Moción de Relevo").

Al cabo de varios incidentes procesales, el 20 de octubre de 2022, el TPI emitió una *Orden* en la que encontró al Recurrido incurso en desacato y reiteró que la deuda de pensión alimentaria era líquida y exigible. No obstante, el TPI señaló que no ordenaría el arresto del Recurrido, debido a que este no era residente de Puerto Rico. En vez, señaló que la Hija debía presentar una acción de cobro de dinero fuera de Puerto Rico.

Luego de recurrir sin éxito ante este Tribunal (KLAN202201011), la Hija acudió al Tribunal Supremo de Puerto Rico (CC-2023-0227), foro que, mediante Opinión, pautó la siguiente norma:

> **[U]n tribunal de Puerto Rico, con jurisdicción sobre las partes, se encuentra facultado para emitir una orden de encarcelamiento por desacato civil, contra un alimentista <u>no residente</u>, sujeto a que esta sea registrada en las dependencias aplicables de la jurisdicción donde este reside, conforme al esquema procesal de la LIUAP. El diligenciamiento de la orden de arresto recaerá en las autoridades de esa jurisdicción**. *James Soto v. Montes Díaz, 213 DPR 718, 741-742 (2024)* (Énfasis y subrayado en el original).

De conformidad, el Tribunal Supremo dispuso lo siguiente:

> *… [S]e devuelve el caso al Tribunal de Primera Instancia para que expida una Orden en virtud de la cual reitere la vigencia de la pensión alimentaria en favor de la señora Montes James y ordene el arresto del señor Montes Díaz, por estar incurso en desacato civil por el incumplimiento de su obligación de prestar alimentos. Consecuentemente, el foro primario deberá valerse de los mecanismos que provee la Ley Interestatal Uniforme de Alimentos entre Parientes para registrar la Orden en el*

*Estado de Florida. James Soto*, 213 DPR a la pág. 742. (Itálicas en el original).

Continuados los procedimientos ante el TPI, el 24 de junio de 2024, el TPI dictó una *Orden de Arresto y Encarcelamiento Actualizada.* En síntesis, el TPI actualizó la cuantía de la deuda por concepto de pensión alimentaria y ordenó el arresto del Recurrido. No obstante, no se desprende de los autos que dicha orden fuera registrada en el estado de Florida, donde reside el Recurrido.[2] En vez, el TPI ordenó a la Administración de Sustento de Menores (ASUME) registrar la orden de pensión en ese estado y recurrir al foro correspondiente en auxilio de jurisdicción.

Mediante una *Moción en Cumplimiento de Orden* presentada el 7 de enero de 2025, la ASUME informó que no pudo registrar la orden de arresto en Florida, por falta de jurisdicción, pues no se trata de la pensión alimentaria de un menor de edad.

El 17 de enero, el TPI emitió una *Orden* en la que dio por cumplido lo ordenado por el Tribunal Supremo, ello a pesar de que, claramente, no se había cumplido con lo ordenado por dicho foro, pues el tribunal no gestionó el registro de la orden de arresto en el estado de Florida. Además, **el 7 de marzo de 2025**, el TPI relevó al Padre del pago de pensión alimentaria, "efectivo al 31 de diciembre de 2023", ello "ante la culminación de los estudios" de la Hija.

Resaltamos, en esta coyuntura, que, ante el Tribunal Supremo, el Padre planteó que existía una "reciente decisión del Departamento de Veteranos" (el "VA") a raíz de la cual la Hija "era elegible para asistencia educacional efectiva el 19 de diciembre de 2021" (el *Dependents Educational Assistance*, o el "Beneficio").

Luego, **en febrero de 2025**, ya devuelto el mandato al TPI, el Padre, a través de una *Solicitud de Orden de Producción de*

---

[2] Véase, *Resolución* de 31 de mayo de 2024, Apéndice 15 del recurso de apelación, pág. 95.

*Documentos* (la "Moción"), requirió al TPI que le ordenase a la Hija indicar "cuándo comenzó a recibir los beneficios de educación" del VA, así como suplir copia de los estados bancarios correspondientes a la cuenta en que hayan depositado dichos beneficios **desde febrero de 2023**. Arguyó que dicha información era pertinente, pues los pagos del Beneficio eran un método "válido y aceptable del pago de la pensión" adeudada.

La Hija se opuso a la Moción. En primer lugar, arguyó que ya el Tribunal Supremo había considerado y rechazado que el Beneficio tuviese pertinencia en este contexto.

Segundo, la Hija planteó que el Beneficio, por ir dirigido a gastos educativos, no podía considerarse como un pago de la pensión básica del Padre. Resaltó que la pensión básica era "separada e independiente de la obligación ... de aportar el 55% de [sus] gastos universitarios". Señaló que al Padre nunca se le requirió que pagase, ni en efecto pagó, porción alguna de sus estudios universitarios, mientras que la deuda de pensión básica era líquida, vencida y exigible.

Tercero, la Hija adujo que, como el Beneficio no se consideraba "ingreso del deudor alimentario", tampoco podía acreditarse contra una deuda alimentaria vencida. Ello porque, al no tratarse de "dinero recibido" por el Padre, tampoco podía considerarse que el Padre "transmiti[ó]" el mismo a la Hija para abonar a su deuda de pensión alimentaria. La Hija consignó que así lo había concluido este Tribunal en *Gutiérrez Rivera v. Vázquez Rivera*, Sentencia de 28 de mayo de 2021 (KLCE202100502) (la "Sentencia de 2021").

Mediante un dictamen notificado el 28 de mayo (la "Decisión"), el TPI declaró con lugar la Moción. El TPI concluyó que cualquier parte del Beneficio, no usado por la Hija para sus gastos educativos, debía acreditarse a la deuda de pensión alimentaria del Padre.

Además, el TPI determinó dejar sin efecto la orden de arresto del Padre, en atención a que la Hija no había demostrado que estuviese en una "situación de necesidad inmediata de alimentos que justifique utilizar el encarcelamiento" del Padre. A los fines de hacer cumplir su dictamen, el TPI ordenó a la Hija informar la "cuantía de la asistencia recibida", por concepto del Beneficio, así como "los años o periodos universitarios que dicha asistencia cubrió".

El 11 de junio, la Hija solicitó la reconsideración de la Decisión, lo cual fue denegado por el TPI mediante una *Resolución* notificada el 18 de junio.

Aún inconforme, el 18 de julio, la Hija presentó el recurso que nos ocupa[3]; formula los siguientes cinco (5) señalamientos de error:

> Primer Señalamiento de Error: Abusó de su discreción el Tribunal de Primera Instancia al negarse a diligenciar, y posteriormente dejar sin efecto, la orden de arresto expedida contra el apelado por su incumplimiento con sus obligaciones alimentarias, en clara contravención con el mandato del tribunal supremo, el cual constituye la ley del caso.

> Segundo Señalamiento de Error: Erró el Tribunal de Primera Instancia al reducir retroactivamente una deuda por concepto de pensión alimentaria decretada por el Tribunal Supremo como vencida, líquida y exigible, en clara contravención con el mandato del Tribunal Supremo, el cual constituye la ley del caso, y en contravención a la norma pautada en *Ex Parte Valencia*, 116 DPR 909 (1986).

> Tercer Señalamiento de Error: Erró el Tribunal de Primera Instancia al considerar como ingreso del alimentante cualquier beneficio que haya recibido directamente la apelante bajo el programa de asistencia educacional administrado por el Departamento de Asuntos De Veteranos de los Estados Unidos, aplicándolos a su vez como crédito, en contravención a lo resuelto por este tribunal de apelaciones en *Gutiérrez Rivera v. Vázquez Rivera*, KLCE202100502, Sentencia del 28 de mayo de 2021.

> Cuarto Señalamiento de Error: Erró el Tribunal de Primera Instancia al aplicar créditos contra la pensión básica establecida, a pesar de que la obligación de aportar a los gastos universitarios de la apelante fue fijada de forma separada e independiente y, como

---

[3] La Hija acompañó el recurso con una solicitud en auxilio de jurisdicción, la cual fue denegada mediante una *Resolución* del 18 de julio.

cuestión de hecho, el alimentante-apelando nunca contribuyó a dichos gastos universitarios.

Quinto Señalamiento de Error: Erró el tribunal de primera instancia al condonar de facto – parcial o totalmente - una deuda por concepto de pensión alimentaria, a pesar de que ello implica:

a) negar que las pensiones alimentarias gozan del más alto interés público, aun cuando la parte alimentista se trate de una estudiante universitaria a tiempo completo con desempeño académico excelente; y

b) afirmar que una deuda por concepto de pensión alimentaria es equiparable a una deuda ordinaria.

Luego de que le ordenáramos al Padre mostrar causa por la cual no debíamos expedir el auto solicitado y revocar la Decisión, este presentó su alegato el 15 de agosto, en el cual reproduce lo planteado en la Moción. Resolvemos.

II.

La obligación de proveer alimentos a los hijos menores de edad es parte del derecho a la vida establecido en el Artículo 2 de la Sección 7 de la Constitución del Estado Libre Asociado del ELA. Const. PR, Art. 2, Sec. 7, 1 LPRA; *De León Ramos v. Navarro Acevedo*, 195 DPR 157, 169 (2016), *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 711 (2014); *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 560 (2012); *Fonseca Zayas v. Rodríguez Meléndez*, 180 DPR 623, 632 (2011); *McConnell v. Palau*, 161 DPR 734, 745 (2004).

Toda vez que el derecho de los menores a recibir alimentos es uno consustancial al derecho a la vida, existe un alto interés público de asegurar el cumplimiento del deber de prestar alimentos. *Llorens Becerra v. Mora Monteserín*, 178 DPR 1003, 1016 (2010); *Chévere v. Levis*, 150 DPR 525, 535 (2000); *Martínez v. Rodríguez*, 160 DPR 145, 150-151 (2003); *Argüello v. Argüello*, 155 DPR 62, 69-70 (2001). En virtud de ello, se aprobó la Ley Núm. 5 de 30 de diciembre de 1986, conocida como la Ley Orgánica de la Administración para el

Sustento de Menores, según enmendada, 8 LPRA sec. 501 *et seq.* (la "Ley 5"). Rodríguez Rivera, 191 DPR a las págs. 711-712.

Las determinaciones relacionadas con alimentos siempre están sujetas a modificación según varíen las circunstancias de las partes. Este tipo de adjudicación nunca tiene el carácter de cosa juzgada. *Figueroa v. Del Rosario*, 147 DPR 121, 129 (1998); *Cantellops v. Cautiño Bird*, 146 DPR 791, 806 (1998).

**La obligación de los padres de alimentar a sus hijos no cesa automáticamente por el mero hecho de que estos hayan advenido a la mayoría de edad**. Este principio surge del Artículo 4 de la Ley 5, 8 LPRA sec. 503, que dispone lo siguiente: "[e]n el caso en que la salud física o emocional del menor, así como sus necesidades y aptitudes educacionales o vocacionales lo requieran, la obligación de los padres podría continuar hasta después que el alimentista haya cumplido la mayoridad".

"Ni la emancipación ni la mayoría de edad de los hijos relevan al padre de su obligación de alimentarles si aquellos lo necesitaren". *Sosa Rodríguez v. Rivas Sariego*, 105 DPR 518, 523 (1976). Esta obligación de alimentar a los hijos se funda en los principios universalmente reconocidos de solidaridad humana asociados al derecho natural y es imperativo de los vínculos familiares. *Rodríguez Avilés v. Rodríguez Beruff,* 117 DPR 616, 621 (1986). Dicho deber de alimentar está reglamentado en los Artículos 653-657 del Código Civil de Puerto Rico, 31 LPRA secs. 7531-7535; en la Ley 5, *supra*, y en las *Guías mandatorias para computar las pensiones alimentarias en Puerto Rico* (las "Guías Mandatorias").

En lo pertinente, el Artículo 653 del Código Civil, 31 LPRA sec. 7531, establece que se entenderá por alimento "todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia". La educación se considera parte de los

alimentos cuando el alimentista es menor de edad. *Íd.* Todo lo que se considere alimentos incluirá tanto las necesidades físicas del alimentista, como las intelectuales. *Argüello,* 155 DPR a la pág. 71. Aunque el Código Civil distingue cuando el alimentista es menor de edad, el Artículo 655 de dicho cuerpo legal establece lo siguiente:

> Si el alimentista alcanza la mayoridad mientras cursa ininterrumpidamente estudios profesionales o vocacionales, la obligación de alimentarlo se extiende hasta que obtenga el grado o título académico o técnico correspondiente o hasta que alcance los veinticinco (25) años de edad, lo que ocurra primero, a discreción del juzgador y dependiendo las circunstancias particulares de cada caso. 31 LPRA sec. 7533.

La pensión alimentaria será fijada tomando en consideración lo dispuesto en la Ley 5, *supra*, y en las Guías Mandatorias. Ahora bien, siempre será fijada y podrá ser posteriormente aumentada o disminuida, de manera proporcional a los recursos o ingresos del alimentante y las necesidades del alimentista. 31 LPRA sec. 565. El Artículo 2 (20) de la Ley 5, 8 LPRA sec. 501, define el concepto de ingreso de la siguiente manera:

> [...] cualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico; del Gobierno de Estados Unidos de América, el Distrito de Columbia; las Islas Vírgenes de Estados Unidos de América; o cualquier territorio o posesión sujeta a la jurisdicción de Estados Unidos de América, según lo permitan las leyes y reglamentos federales aplicables. Además, de cualquier estado de Estados Unidos de América, o de cualquier subdivisión política de los mismos, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad. Asimismo, contempla los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o

cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica.

III.

Contrario a lo razonado por el TPI, concluimos, al igual que lo hicimos en la Sentencia de 2021, que las cuantías recibidas por la Hija, por concepto del Beneficio, no son acreditables a la deuda del Padre por la pensión básica acumulada antes de que la Hija comenzara a recibir el Beneficio. El Padre venía obligado a cumplir fielmente, durante dicho período, con los pagos de pensión alimentaria, y no podía, como lo hizo, incumplir con su obligación, aparentemente en la expectativa de que un tercero "pagaría" dicha deuda posteriormente.

Lo posiblemente recibido por la Hija, por concepto del Beneficio, no constituyó un ingreso o beneficio económico del Padre, de manera que pudiera ser considerado como dinero recibido por él y transmitido para abonar a su deuda de pensión alimentaria. Es decir, no procede un abono contra una deuda anterior, sobre la base de un beneficio que no correspondía al Padre, ni es atribuible a su trabajo. Al comienzo del recibo del Beneficio, ya la deuda se había acumulado en la medida en que el Padre, desde julio de 2021, había incumplido injustificadamente con la pensión alimentaria entonces vigente.

Ahora bien, desde noviembre de 2021, el Padre había solicitado el relevo de la pensión, y en febrero de 2025, cuando el Padre presentó la Moción, todavía estaba pendiente la Moción de Relevo. Por tanto, el TPI podía tomar en consideración la parte del Beneficio recibido por la Hija, en exceso de lo necesario para sus gastos educativos (si algo), para reducir la pensión adeudada **para el período posterior al inicio del recibo por la Hija del Beneficio**.

Por lo tanto, contrario a lo concluido por el TPI, el Padre está obligado a pagar la deuda pendiente por la pensión alimentaria

básica acumulada desde julio de 2021, y hasta el comienzo del recibo del Beneficio por la Hija, sin que pueda utilizarse porción alguna del Beneficio para dar por cumplida dicha obligación.

No obstante, en cuanto al período posterior al comienzo del recibo del Beneficio, y hasta diciembre de 2023, el TPI deberá recibir prueba para determinar (i) en qué fecha comenzó la Hija a recibir el Beneficio, (ii) a cuánto ascendió dicho Beneficio durante este período, (iii) a cuánto ascendió el gasto educativo de la Hija durante dicho período. Cualquier excedente del Beneficio sobre el gasto educativo operará como una reducción de la pensión atribuible a dicho período[4].

Finalmente, hemos determinado que no se justifica, en esta etapa, intervenir con la determinación del TPI de dejar sin efecto la orden de arresto del Padre. Ciertamente, el TPI no cumplió con el mandato del Tribunal Supremo, dirigido a que el tribunal gestionase el registro de la orden de arresto en el estado de Florida (véase, *James Soto,* 213 DPR a la pág. 736). No obstante, en esta etapa, ya la Hija concluyó sus estudios universitarios y el TPI determinó que la necesidad de pensión de la Hija había cesado.

Por tanto, la medida del arresto, diseñada para auxiliar de forma urgente a un(a) hijo(a) cuya necesidad actual no se está atendiendo debidamente, ya no es necesaria ni apropiada. Adviértase que es precisamente por el interés público subyacente en ese tipo de casos que se considera válido, de forma excepcional, recurrir al arresto y encarcelamiento de un alimentante deudor. Ello sin perjuicio de la facultad general que siempre tiene el TPI de castigar con el desacato a quien voluntariamente opte por no cumplir con una orden judicial. *ELA v. Asoc. de Auditores,* 147

---

[4] Aclaramos que, en caso de que este excedente sea mayor a la cuantía de la pensión atribuible a dicho período, **no** correspondería que el sobrante sea utilizado como pago de la deuda acumulada por el Padre durante el período anterior al comienzo del recibo por la Hija del Beneficio.

DPR 669, 681 (1999) (el poder de castigar por desacato es un atributo inherente que posee el Poder Judicial para hacer cumplir sus órdenes y velar por el funcionamiento ordenado de sus procesos).

IV.

Por los fundamentos que anteceden, se expide el auto de *certiorari* solicitado, se modifica el dictamen recurrido y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de forma compatible con lo aquí dispuesto y resuelto.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.  El Juez Monge Gómez emite voto de conformidad con las siguientes expresiones, a las cuales se une el Juez Salgado Schwarz:

> "Estoy conforme con la determinación a la que arribamos en el día de hoy. Sin embargo, entiendo pertinente expresar que, fuera de cómputos aritméticos correspondientes a un periodo en específico y su resultado neto sobre la deuda total, la determinación a la que arribamos en el día de hoy tiene como fundamento no permitir –*so color* del recibo de un beneficio– que un padre alimentante ignore e incumpla con su obligación de proveer alimentos a su hija. Ahora bien, también es importante resaltar que este caso nos ofrece la oportunidad de impedir que se efectúe un sobrepago a una joven alimentista, por vía del beneficio recibido, cuando este último excede sus gastos educacionales.
>
> Lo anterior, porque el Artículo 665 del Código Civil claramente establece que la cuantía de los alimentos debidos al mayor de edad responde a los recursos del alimentante y a las necesidades del alimentista. 31 LPRA sec. 7561. Sobre este particular, dicha disposición legal también establece que al estimar "los recursos **de uno y de otro**" se deben tomar en cuenta, entre otras cosas, "**los beneficios directos e indirectos que recibe de terceras personas**". Íd. (énfasis suplido). Ello cobra más vigencia cuando acudimos al inciso (a) de la sección 3531 del Capítulo 35, correspondiente al Título 38 del *United States Code*, que establece que el beneficio para educación que pueden recibir los cónyuges e hijos dependientes de ex militares que han servido a las Fuerzas Armadas de los Estados Unidos y que han muerto en combate o han sido incapacitados, sean elegibles para el beneficio y puedan utilizarlo para gastos de "**subsistencia**,

matrícula, cuotas, materiales, libros, equipo y otros gastos educativos". 38 USC Ch.35, sec. 3531 (traducción y énfasis suplido).

Entiendo que el concepto de "subsistencia" al que alude la citada disposición legal federal está subsumido o, cuanto menos, asociado al término "necesidad" que debe ser considerado al momento de establecer la cuantía de la pensión alimentaria que puede recibir un mayor de edad, como lo es la Peticionaria. No reconocerle al padre alimentante la posible acreditación a la deuda por concepto de pensión básica de cualquier excedente del beneficio que su hija recibió, equivaldría a ignorar las disposiciones anteriormente dispuestas y reconocer que dicha cuantía –de existir– no se utilizó, precisamente, para suplir sus necesidades no educacionales."

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones